## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **CINDY J. DUNN**, | Civil No. 01-2245 (RHK/JGL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **JO ANNE BARNHART,** **Commissioner of the Social Security Administration,** | |
| Defendant. | |

APPEARANCES

Paul A. Livgard, Esq. on behalf of Plaintiff Cindy J. Dunn

Lonnie F. Bryan, Esq., Assistant United States Attorney, on behalf of Defendant Jo Anne B. Barnhart

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

Plaintiff Cindy J. Dunn seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied her applications for disability insurance benefits and supplemental security income.  The matter has been referred to the undersigned Chief United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.  The parties have submitted cross motions for summary judgment.  For the reasons set forth below, this Court recommends

that the Commissioner's decision be affirmed and the case be dismissed with prejudice.

## I.    INTRODUCTION

Ms. Dunn filed applications for disability insurance and supplemental security income on June 22, 2000.  (R. at 18.)  The Social Security Administration denied the applications initially and on reconsideration.  Ms. Dunn requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 28, 2001.  (R. at 121.)  The ALJ issued an unfavorable decision on August 6, 2001 (R. at 101), and the Appeals Council denied review.  Ms. Dunn then filed a complaint in federal court.  In March 2002, the parties stipulated to a remand under sentence six of 42 U.S.C. § 405(g) because certain exhibits were missing from the record.  (R. at 18, 215.)  The Appeals Council vacated the decision of August 6, 2001 and ordered the ALJ to hold a new hearing, enter the missing evidence, and issue a new decision.  (R. at 216-17.)

The second hearing occurred on May 9, 2002, at which Ms. Dunn stipulated to a new onset of disability date of May 5, 2000.[1]  (R. at 47.)  The ALJ issued a new, unfavorable decision on June 25, 2002.  (R. at 15-37.)  This

---

[1] Ms. Dunn was struck in the head with a baseball bat on May 5, 2000 and suffered a traumatic brain injury.  (R. at 447-48.)

is the decision under review by the Court.  In the decision, the ALJ employed the five-step, sequential analysis provided in 20 C.F.R. § 404.1520.  At step one, the ALJ found that Ms. Dunn had not engaged in any substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found Ms. Dunn was severely impaired by Hepatitis C, traumatic brain injury with cognitive residuals including memory deficits, migraine headaches, lumbar facet degeneration, a history of bilateral rib fractures, a history of left thoracotomy, a borderline personality disorder, chemical dependency, and seizures.  (R. at 24.)  At step three, the ALJ determined that the impairments did not meet or equal a listing in the Listing of Impairments contained in Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(d) and §  416.920(d).  (Id.)  Next, the ALJ progressed to step four and concluded that Ms. Dunn did not retain the residual functional capacity ("RFC") to perform her past relevant work.  (R. at 35.)  Finally, at step five, the ALJ found that Ms. Dunn could perform the job of plastic design applier, of which there are 5,250 jobs in Minnesota.

  Following the decision, the Appeals Council declined to assume jurisdiction, and the ALJ's decision therefore became the final decision of the Commissioner.  (R. at 8.)  The Commissioner moved to reopen the case in

federal court, which the Honorable Richard H. Kyle so ordered on February 11, 2005.

## II. DISCUSSION

Ms. Dunn sets forth three issues in her motion for summary judgment: (1) whether the ALJ erred in finding that drug addiction or alcoholism was a material factor in Ms. Dunn's ability to work since May 5, 2000; (2) whether the ALJ properly considered the opinions of Ms. Dunn's treating physicians; and (3) whether the ALJ correctly found that Ms. Dunn has the RFC to perform work in the national economy.

Judicial review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Brand v. Sec'y of Dep't of Health, Educ., & Welfare, 623 F.2d 523, 527 (8th Cir. 1980). In determining whether evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). If the Commissioner's decision is based on substantial evidence in the record, the Court may not reverse it merely because other

substantial evidence would have supported a different outcome.  <u>Roberts v. Apfel</u>, 222 F.3d 466, 468 (8th Cir. 2000) (citing <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000)).

### A.   <u>Whether the ALJ Erred in Finding that Drug Addiction or Alcoholism Was a Material Factor in Ms. Dunn's Ability to Work Since May 5, 2000</u>

If alcoholism or drug addiction is "a contributing factor material to" the determination of disability, a social security claimant's application must be denied.  42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535.  The claimant has the burden to prove that alcoholism or drug addiction was not a contributing factor material to the disability determination.  <u>Brueggemann v. Barnhart</u>, 348 F.3d 689, 693 (8th Cir. 2003) (citations omitted).  However, "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow."  <u>Id.</u> (citations omitted).

#### 1.   <u>The ALJ's Determination</u>

The ALJ in this case determined that Ms. Dunn was disabled primarily by chemical dependency.  (R. at 19.)  He found the chemical dependency a contributing factor material to her disability and thus denied her benefits.  (<u>Id.</u>)

**2.     Record Evidence of Ms. Dunn's Chemical Dependency**

Upon admission to Fairview University Hospital on June 7, 1999, Ms. Dunn admitted to daily use of crack cocaine and alcohol.[2] (R. at 337.) She reported having been in treatment three times previously, but she was not able to remain chemical-free. (Id.) Ms. Dunn was diagnosed with polysubstance dependency and bipolar disorder. (R. at 338.) Against medical advice, Ms. Dunn left the facility on June 9, 1999. (R. at 340.) She returned to the hospital on June 11, 1999, but was discharged because she would not consent to a halfway house placement. (R. at 345.) The next day, she returned and was admitted for chemical dependency treatment. (R. at 349.) Ms. Dunn participated in another detoxification at a halfway house from October 29, 1999 to January 8, 2000. (R. at 442.)

When Ms. Dunn was admitted to the hospital on May 5, 2000 after being struck in the head with a baseball bat, she admitted to having three drinks of alcohol that day. (R. at 448.) The examining doctor noted possible acute alcohol intoxication. (R. at 449.) Testing showed her blood alcohol level was .152. (R. at 461.) On May 11, 2000, a consulting doctor

---

[2] The Court remains mindful that the onset of disability date is May 5, 2000, but consideration of some prior medical history is helpful to provide context.

wrote that throughout his evaluation of Ms. Dunn, she engaged in drug-seeking behavior. (R. at 456.)

Several key events occurred in July 2000. On July 10, 2000, Ms. Dunn reported to a medical provider that she had used crack cocaine the preceding weekend. (R. at 746.) On July 19, 2000, Ms. Dunn went to Mercy Hospital and asked for medication for her headache. (R. at 538.) Dr. Ito did not give her any narcotic medication due to a history of drug-seeking behavior. (Id.) On July 24, 2000, while Ms. Dunn was in treatment for substance abuse, Dr. Sturm wrote that Ms. Dunn's diagnoses were traumatic brain injury, bipolar affective disorder, and crack/cocaine dependence. (R. at 543.) A treatment note from July 25, 2000 reveals that Ms. Dunn altered a prescription from Dr. Gould for Vicodin; she changed the number of pills from twenty to thirty and added two refills. (R. at 741.) Apparently, another one of Ms. Dunn's doctors, Dr. Dyer, ceased treatment of her for the same behavior. (R. at 740-41.) Ms. Dunn was discharged from the treatment program on July 26, 2000 because she was not able to maintain sobriety. (R. at 735.)

On August 29, 2000, Dr. Kuhlman spoke with Dr. Sturm, who verified that Ms. Dunn had been discharged from treatment due to non-compliance. (R. at 550.) The same day, Dr. Kuhlman wrote that prior to Ms. Dunn's head injury, there was no evidence that her bipolar disorder or

personality disorder had a severe impact on her functioning once her alcoholism was factored out. (R. at 551.)

Dr. Kenning met with Ms. Dunn for a consultative examination on September 28, 2000. (R. at 561.) Ms. Dunn reported that she participates in weekly NA meetings and maintains contact with her treatment counselor. (R. at 562.) Dr. Kenning diagnosed polysubstance dependence, reportedly in remission; crack cocaine dependence, reportedly in remission; bipolar affective disorder; anxiety disorder, including obsessive-compulsive behaviors; and antisocial personality disorder with borderline features; head injury; and headaches. (R. at 565.)

Dr. Kuhlman wrote in October 2000 that Ms. Dunn would be able to work as long as she abstained from alcohol and drugs and continued her treatment. (R. at 577.)

On February 28, 2001, Ms. Dunn went to Mercy Hospital for treatment for a migraine headache. (R. at 700.) She denied using alcohol or drugs. (Id.) However, a drug screen was positive for cocaine use. (R. at 701.) Ms. Dunn explained that she had recently smoked marijuana, which must have been laced with cocaine. (Id.)

On May 11, 2001, Ms. Dunn presented to Fairview University Medical Center, reporting increased depression. (R. at 712.) She attributed

the increase in depression to increased substance abuse during the preceding month: spending up to $200.00 a day on crack cocaine and drinking a pint of alcohol a day.  (Id.)  A urine toxicology screen was positive for barbiturates, cocaine, and opiates.  (R. at 714.)  Treatment notes also reveal that Ms. Dunn reported being sober for six or seven months (from approximately May 2000 to November 2000), but she relapsed in November 2000 when she visited relatives.  (R. at 725, 731.)  Ms. Dunn told Dr. Buchanan that she was ready to accept treatment for her chemical dependence, but she had not been ready in January 2001.  (R. at 727.)

In June 2001, medical expert Dr. Butler testified that Ms. Dunn could perform routine and repetitive work, low-stress work as long as she abstained from alcohol or drugs.  (R. at 162.)  Similarly, medical expert Dr. Stevens testified in May 2002 that even considering Ms. Dunn's chemical dependency, she would be able to work.  (R. at 78-81.)

### 3. **Findings and Recommendation**

Considering all of the above evidence, much of which the ALJ referred to in his decision, the Court finds the ALJ did not err in determining that Ms. Dunn's substance abuse was a material factor to his finding of disability.  The only two doctors who factored out the effects of substance abuse were Dr. Butler and Dr. Kuhlman.  Both doctors opined that Ms. Dunn

would not be disabled absent the effects of substance abuse. Dr. Stevens testified that even considering Ms. Dunn's substance abuse, she would not be disabled. The ALJ did not err in considering Dr. Butler's and Dr. Stevens' opinions because the testimony of a medical expert can constitute substantial evidence. Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996); see also 20 C.F.R. § 404.1527(f)(2)(iii) (permitting ALJs to consider opinions from medical experts). Likewise, the ALJ correctly relied on Dr. Kuhlman's opinion because evidence from consulting physicians may constitute substantial evidence. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005); see also 20 C.F.R. § 404.1527(f)(2)(i) (requiring ALJs to consider opinions of non-examining medical sources). Although two of Ms. Dunn's treating physicians opined that she could not work (R. at 665, 695-96), neither doctor indicated that they were factoring out substance abuse in forming this conclusion. The Commissioner is entitled to summary judgment on this issue.

### B. Whether the ALJ Properly Considered the Opinions of Ms. Dunn's Treating Physicians

Ms. Dunn contends that her doctors have found her alcoholism "mostly" in remission, and that she suffers from numerous personality disorders and mental impairments including bipolar affective disorder and depression. Specifically, Ms. Dunn faults the ALJ for the following: not

considering the opinion of Dr. Grant, her treating psychologist, who opined that she had only "fair" abilities; not accepting Dr. Butler's testimony that her substance abuse was in remission; not agreeing with Dr. Sturm's finding that she would have trouble with two or more step directions; not adopting Dr. Kenning's opinion that she has only a borderline ability to persist, follow instructions, and concentrate; rejecting Dr. Svoboda's determination that she suffers from cognitive defects due to a traumatic brain injury; and failing to consider numerous diagnoses of migraine headaches.

In his decision, the ALJ considered but rejected the opinion of Dr. Grant. (R. at 34.) Dr. Grant completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form on April 2, 2001. (R. at 695-96.) Dr. Grant rated almost all of Ms. Dunn's abilities as "fair," meaning she could perform certain activities satisfactorily some of the time, or "poor," meaning she had no useful ability to function. (Id.) Although the form contains a space for the doctor to write the medical and clinical findings supporting the assessment, Dr. Grant did not complete this part of the form. He merely checked boxes on the form. "A treating physician's opinion is generally entitled to substantial weight, although it is not conclusive and must be supported by medically acceptable clinical or diagnostic data." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (citing Pena v. Chater, 76 F.3d

906, 908 (8th Cir. 1996)). Here, Dr. Grant failed to include supporting clinical or diagnostic data. The Court has examined the medical evidence and finds no clinical or diagnostic data supporting Dr. Grant's findings. The record is simply void of such evidence. As such, the ALJ was entitled to discount the opinion. In addition, the record shows Ms. Dunn had returned to abusing alcohol and cocaine at the time the form was completed, and Dr. Grant did not distinguish between the effects of substance abuse and any mental impairment.

As for Dr. Butler's testimony that Ms. Dunn's substance abuse was in remission, the record contains numerous references to ongoing substance abuse, as cited by the Court in Part II.A.2. Thus, the ALJ correctly relied on other substantial evidence in the record to find Ms. Dunn's substance abuse was, in fact, not in remission.

Dr. Sturm saw Ms. Dunn twice a week from May 22, 2000 through July 24, 2000, and she completed a two-page Psychological Medical Report. (R. at 542.) Ms. Dunn contends that the ALJ did not give proper weight to Dr. Sturm's opinion. To the contrary, the ALJ's decision cited to Dr. Sturm's report without discounting it. (R. at 22.) To the extent the ALJ did not specifically adopt the limitation that Ms. Dunn could not follow directions consisting of two or more steps, the Court finds this was not in error. Like Dr.

Grant's form, Dr. Sturm's report contains no clinical or diagnostic data supporting the conclusions therein, and the Court has found no such data in the record. Further, Dr. Sturm's conclusion is called into question by other evidence from the doctor. Dr. Sturm reported that Ms. Dunn was discharged from treatment based on non-compliance including failure to take prescribed medications. (R. at 550.) Ms. Dunn's failure to take her prescription medication could have accounted for her inability to follow complicated directions. Dr. Sturm also wrote that she was uncomfortable assessing Ms. Dunn's mental condition in terms of ability to work, and thus, any limitations purportedly imposed by Dr. Sturm in the earlier report should not be considered in a work-related context. The ALJ did not err by not limiting Ms. Dunn to one- or two-step instructions.

Dr. Kenning examined Ms. Dunn on September 28, 2000 and wrote that Ms. Dunn had only a borderline ability to persist, follow instructions, and concentrate, among other findings. (R. at 561-66.) The ALJ properly considered this evidence (R. at 22), especially in light of other findings in the report. Namely, Dr. Kenning concluded that Ms. Dunn's memory would improve if she abstained from drugs. (R. at 565.) Second, recovery from a brain injury takes about twelve months, and at the time of the evaluation, Ms. Dunn's injury was only five months old. (Id.) Third, Dr.

Kenning attributed some loss in concentration and memory to Ms. Dunn's sadness over her husband's incarceration and termination of her parental rights, and the doctor expected this sadness to abate in time. (R. at 565-66.) Given the time between the report and the ALJ's decision – over a year and a half – the ALJ was justified in deriving that Ms. Dunn's abilities had improved. In addition, the ALJ properly relied on opinions by Dr. Butler, Dr. Stevens, and Dr. Kuhlman, which indicated that Ms. Dunn did not suffer from a debilitating loss of concentration, persistence, and ability to follow instructions. (R. at 76, 78-79, 154, 156, 160, 575-77.)

   Dr. Svoboda found Ms. Dunn to suffer from effects of a traumatic brain injury. Yet, a treatment note from this doctor on October 6, 2000, shows that Ms. Dunn's mental status was unremarkable. She was alert and oriented to time and place, and her language function was fluent with no errors. (R. at 570.) Ms. Dunn's memory was intact. (Id.) The examination revealed no cognitive defects. Other examinations by Dr. Svoboda reveal the same. (R. at 659, 664.) When a doctor's opinion is inconsistent, an ALJ is entitled to discount it. Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (citation omitted). Moreover, Dr. Svoboda's opinion is entitled to less weight because she repeatedly recommends Ms. Dunn to be seen for a neuropsychological evaluation (R. at 660, 665), which reveals the doctor's view

that she could not accurately evaluate Ms. Dunn's symptoms without testing. Other substantial evidence in the record, cited by the ALJ, contradicts Dr. Svoboda's opinion. Testing by Dr. Kenning showed that Ms. Dunn did suffer from a memory impairment, but the impairment was expected to improve over time. A report from Dr. Dossa, made mere days after the brain injury and during a time when Ms. Dunn was abstaining from using alcohol or drugs shows normal memory and concentration. (R. at 455.) Finally, the ALJ was correct in noting that Dr. Svoboda did not distinguish between cognitive defects due to physical or psychiatric impairments and the effects of chemical dependency.

Numerous doctors diagnosed Ms. Dunn with migraine headaches. Contrary to Ms. Dunn's assertion, the ALJ did not ignore these diagnoses. (R. at 21-22.) In fact, the ALJ found Ms. Dunn to be severely impaired by migraine headaches. (R. at 24.) However, the ALJ viewed the medical evidence of headaches in light of Ms. Dunn's well-documented, drug-seeking behavior and notations by physicians questioning the validity of the headaches. (R. at 24, 25; R. at 622, 623, 650, 788, 791.) The ALJ did not err in discounting the medical evidence of Ms. Dunn's headaches.

In the section of Ms. Dunn's memorandum pertaining to the diagnoses of her treating physicians and the weight afforded them, she also

challenges the ALJ's assessment of her daily activities. However, Ms. Dunn has taken this portion of the decision out of context. The ALJ did not use Ms. Dunn's daily activities solely to provide support for his finding that she could not work. Rather, the ALJ properly considered her daily activities in his credibility analysis under <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984). (R. at 26.) <u>Polaski</u> mandates ALJs to consider a claimant's activities of daily living in assessing subjective complaints. To the extent that Ms. Dunn is challenging this aspect of the ALJ's decision, it is well-established that daily activities such as housework, cooking, shopping, and visiting with friends may be used to discredit subjective complaints. <u>Lawrence v. Chater</u>, 107 F.3d 674, 676 (8th Cir. 1997); <u>Nguyen v. Chater</u>, 75 F.3d 429, 430 (8th Cir. 1996). Additionally, an ALJ must consider activities of daily living in weighing the "B criteria" of Listing 12.08, Borderline Personality Disorders. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.08. The ALJ in this case correctly looked at Ms. Dunn's activities in this respect. (R. at 29.)

The Court has considered all of Ms. Dunn's arguments about the ALJ's assessment of her treating physicians' opinions, as well as the opinions of consulting doctors and medical experts. The Court finds the ALJ did not err in these aspects of his decision, and the Court therefore recommends summary judgment be awarded to the Commissioner on this issue.

### C. Whether the ALJ Correctly Found that Ms. Dunn Has the RFC to Perform Work in the National Economy

Ms. Dunn challenges the ALJ's determination that she would be able to work as a plastic design applier.  At the hearing, the ALJ formulated a hypothetical question with the following restrictions:  an age range of forty-one to forty-three years; a twelfth grade education; impairments in accordance with Ms. Dunn's testimony and the medical record, namely, hepatitis C, a history of traumatic brain injury, loss of memory, migraine headaches, past surgeries, a history of bilateral rib fractures, a mild degenerative condition of her back, a history of left thoracotomy, an organic mental disorder, a personality disorder, and some substance abuse disorder; simple, repetitive unskilled tasks; brief, superficial contact with others; no available drugs or alcohol; no unprotected heights or dangerous machinery; no driving; visually demonstrable instructions; and low to moderate stress.  (R. at 86, 87.)  A hypothetical question must include only the impairments and limitations accepted by the ALJ.  Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001) (citing Chamberlain v. Shalala, 47 F.3d 1489, 1495-96 (8th Cir.1995)). The Court has found that the ALJ did not err in assessing Ms. Dunn's limitations and impairments, and the hypothetical question accurately reflects the ALJ's assessment.

In response to the hypothetical question, vocational expert Mitchell Norman testified that Ms. Dunn could work as a plastic design applier. (R. at 87.) Mr. Norman testified that the job of plastic design applier is a low-stress job, requiring only one or two steps, and unskilled and sedentary in nature. (R. at 87, 89.) A vocational expert's testimony in response to a properly formulated hypothetical question constitutes substantial evidence on which the ALJ may base his decision. Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993) (citing Rappoport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir. 1991)). Thus, the ALJ in this case properly relied on Mr. Norman's testimony in concluding that Ms. Dunn could work as a plastic design applier.

Ms. Dunn bases her challenge to the ALJ's conclusion on testimony Mr. Norman gave in response to an amended hypothetical question from Ms. Dunn's counsel. This question included a limitation that Ms. Dunn had only a fair ability to perform numerous tasks, based on Dr. Grant's evaluation. The ALJ was not required to accept this hypothetical question and the resulting testimony as substantial evidence. As discussed above in Part II.B, the ALJ was justified in disregarding Dr. Grant's opinion, and he did not err by failing to include the restrictions advanced by Ms. Dunn's counsel in

the hypothetical question.  The Commissioner should be granted summary judgment on this issue.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED**:

(1)  Plaintiff Cindy Dunn's Motion for Summary Judgment (Doc. No. 15) should be **DENIED**; and

(2)  Defendant Commissioner's Motion for Summary Judgment (Doc. No. 22) should be **GRANTED**.

Dated:  June 15, 2005

 s/ Jonathan Lebedoff
JONATHAN LEBEDOFF
Chief United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by July 5, 2005.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.